Van Waggoner v. Coe.

, See *Clapp v. Ely*, 3 *Dutch*, 622.

WILLIAM H. VAN WAGGONER et al. *vs.* JOHN COE.

1. A bill of exceptions can only be taken in a case where a writ of error lies. It cannot be taken in insolvent cases.

. 2. Where a paper is presented by counsel on one side, to counsel on the other, which he is not bound to receive and consent to or amend, if the paper is not at the time agreed upon, the party who presented it cannot afterwards claim to use it in any way.

3. Where an application is made for the benefit of the insolvent laws, no form of petition is prescribed by law. The petition will be sufficient if it show that the petitioner is so under arrest as to be entitled to a discharge, and to give the court jurisdiction of his case.

4. If an insolvent debtor apply to the Court of Common Pleas for a discharge, and the case is tried before a jury, the court have power to set aside the verdict for sufficient reasons and order a new trial.

*Certiorari* to the Court of Common Pleas of the county of Passaic, brought by William H. Van Waggoner and others, defendants below, to reverse a judgment of said court discharging John Coe as an insolvent debtor.

Argued before Justices ELMER and HAINES, by *Woodruff* and *Zabriskie*, for plaintiffs in *certiorari*, *Hopper* and *W. Pennington*, for defendant.

The opinion of the court was delivered by

ELMER, J.   A rule having been granted in this case to take affidavits in support of the reasons filed for the reversal of the judgment of the court, discharging John Coe as an insolvent debtor, affidavits were produced relative to the making and signing of a certain paper, purporting to be a bill of exceptions, sealed by the judges on the trial.   It appeared to have been drawn up some time after the trial, and submitted to the opposite counsel, and returned by him with certain alterations and amendments, but eventually presented to the judges, and signed by them without all those amendments and without the consent of the opposite counsel.   Much of the testimony in the affidavits related to the correctness or incorrectness of certain of the alterations made in the original draft.   Both the original draft and the copy signed by the judges were made exhibits.   The reading of both these papers was objected to on the argument of the case before this court, by the counsel of the defendant in *certiorari*, and insisted upon on the other side.

The court overruled the papers, as a part of the testimony of the witness, as a bill of exceptions or as a state of the case.   We, however, allowed the original paper, as amended by counsel, to be read as a correct statement of the facts, so far as they had been agreed to, and permitted counsel to argue the points therein presented, reserving our opinion as to the question, whether it could properly

be received in any way. Upon a more particular examination of the paper and a more careful reflection we are satisfied that we ought to have rejected, not only the paper signed by the judges, but the original paper submitted to the counsel. It is clear that there can be no bill of exceptions but in cases were a writ of error lies. It is a proceeding introduced by statute, and is in express terms confined to such cases. *Rev. Stat.* 980.

Judge Ryerson, who delivered the opinion of the court in *Davis* v. *Hendrickson*, 3 *Green* 483, admits that a bill of exceptions was not good in an insolvent case, but says it may be received as an authentic state of facts. In that particular case this may have been, under the circumstances allowable ; but it is clear the party has no legal right to it, and we think this precedent ought not to be followed as a general rule. The court deciding the case may undoubtedly, in its discretion, refer questions of law to the higher court by a state of the case, signed at the time, or at such time afterwards as they specially appoint ; but to allow such papers to be drawn up afterwards, and signed without the consent of the opposite counsel, would be highly dangerous and improper. As a statement of the facts agreed to by counsel, we find the original paper contains his emendations in pencil, and the whole document in such a state that the court ought not to undertake to decipher it. And if it was perfectly plain, we are not satisfied, upon reflection, that we ought to hold the defendant bound by the statements contained in it. When a paper is presented by counsel one one side, to the counsel on the other, which he is not bound to receive and consent to or amend, if the paper is not at the time acted upon, as he is willing to allow it, the other party cannot afterwards claim to use it in any way. To permit this might in many cases do great injustice. We are therefore constrained to reject this paper, and we do so the more willingly because, after the most careful examination of the

matters contained in it we have been able to make, we are not satisfied that any error is shown to exist in the rulings of the court excepted to.

Two objections to the judgment of the court, appearing in the papers returned, remain to be considered. First, it is objected that the petition is radically defective. It sets forth, with much minuteness of detail, that the petitioner was arrested upon a *capias ad respondendum*, at the suit of certain plaintiffs named; that he gave bond to the sheriff for his appearance, afterwards entered into a recognisance of bail, and subsequently was surrendered into custody by his bail before the judge of the court, notice whereof was immediately given to the attorney of the plaintiffs, and an *exoneretur* entered on the bailpiece, and all the requirements of the law complied with to make the surrender complete; that immediately after said surrender, the petitioner then being in custody of the sheriff, made out and delivered an inventory, and gave bond with sufficient security, in double the sum for which he was arrested, pursuant to the act abolishing imprisonment in certain cases; that he presented his petition for a discharge according to the condition of his bond, and the court dismissed his petition for an alleged defect therein, whereupon he was immediately surrendered to the custody of the sheriff, and placed in close confinement in the jail of said county, where he remained. The petitioner, therefore, annexes an inventory and account and list of his creditors, and prays for a discharge.

No form of petition is prescribed by the laws, and, except the inventory and account and list of creditors, nothing more is requisite than sufficient facts to show that the petitioner is so under arrest as to be entitled to a discharge, and thus to give the court jurisdiction of his case. Such was the decision in the case of *Stagg* v. *Austin*, 3 *Harr.* 84, from which we see no reason to depart. It is objected that it does not appear when he gave the bond

or the recognisance, or what bail surrendered him, or who entered the *exoneretur*, or when, or in what action he was under arrest, or that his sureties were such as the law required, or when they became security, or under which particular statute he applies. But all these things do appear so far as it is necessary to show he was legally in confinement. The action in which he was arrested is stated, and the plain meaning of the petition is, that the subsequent proceedings were in the same action, and took place in the same court. The statement, that the surrender was made complete according to law, is in effect an averment that he was duly committed. No case requires the manner in which the proceedings were carried on to be stated with all their details. It is sufficient if enough is stated to permit the inference that they were legally done. In the case of *Hulshizer* v. *Kocker, Spenc.* 390, the objection was not taken upon the petition, but it appeared upon the examination as a fact, that the surrender in discharge of the bail had never been legally effected, and therefore the debtor was never in a situation to entitle him to a discharge. We are of opinion that the petition was sufficient.

The other objection is, that the issue joined between the petitioner and his creditors was first tried, and a verdict rendered for the defendants, whereupon, as the record states, the court ordered that the plaintiff be continued in custody until he afterwards be delivered by due course of law ; that subsequently the court, after argument, set aside the verdict and ordered that a new trial be had on the first day of the next term. Upon the new trial, the jury rendered a verdict for the plaintiff, and judgment was given that he be discharged out of custody according to the force, form, and effect of the act. It is insisted, by the plaintiff's counsel, that the insolvent court has no power to grant a new trial ; and they rely much upon the fact, that the act of 1853 (*Pamph.* 21) grants this power

in express terms, and requires three judges to act. We are satisfied that it was an incidental power of the court, as one of general jurisdiction, vested with the power of hearing and determining this particular matter, and of trying an issue in the ordinary manner by a jury, and of rendering a judgment thereon, to set aside the verdict for sufficient reasons. The case is analogous to that of a trial by jury of an appeal from the judgment of a justice, in which it has been held that although the justice cannot grant a new trial, or even retry the case if the jury fail to find a verdict, yet the Common Pleas can. *Squier* v. *Gale*, 1 *Halst.* 155. There is, therefore, nothing in this objection, and the result is, that the judgment of the insolvent court must be affirmed